

FILED
FEB 16 2007
02-16-07
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY CASTRO; | ) |
| Plaintiff, | ) No. |
| vs. | ) **07CV931** |
| | ) **JUDGE GRADY** |
| CITY OF CHICAGO, | ) **MAG. JUDGE ASHMAN** |
| A Municipal Corporation; | ) |
| Chicago Police Officers | ) |
| JEROME FINNIGAN, Star 5167; | ) Jury Demand |
| KEITH HERRERA, Star 17289; | ) |
| CARL SUCHOCKI, Star 18391; | ) |
| THOMAS SHERRY, Star 14103; | ) |
| CHERYL HURLEY, as administrator | ) |
| of the estate of JOHN HURLEY, Star 17516; | ) |
| and Unknown Chicago Police Officers | ) |
| John Does and Jane Roes 1-10; | ) |
| Defendants. | ) |

## COMPLAINT

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

2. Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

4. Defendant police officers are duly appointed and sworn City of Chicago police officers. At all times material to this Complaint, the Defendant-Officers were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

5. The Defendant-Officers are sued in their individual capacities.

6. The CITY OF CHICAGO is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant-Officers.

7. This case involves allegations against police officers who worked in the Chicago Police Department Special Operations Section (SOS). The incident alleged below was part of a pattern and practice of gross abuse of power by SOS officers, who essentially ran a robbery ring which entailed illegally entering person's homes; conducting illegal searches of homes, vehicles, and persons; false arrests; stealing narcotics, jewelry, weapons, money (hundreds of thousands of dollars) and other valuables; planting drugs on innocent people; as well as physical abuse, intimidation, and threats.

After an alleged internal investigation that suspiciously took several years (which allowed the officers to remain on the street and continue their reign of terror), finally on September 8, 2006, four Special Operations Section officers were arrested and charged: JEROME FINNIGAN, KEITH HERRERA, THOMAS SHERRY and CARL SUCHOCKI, all Defendants in this case. These officers were charged with a long list of felonies, including, *inter alia*, multiple counts of home invasion, armed violence, aggravated kidnaping, narcotics delivery, burglary, and official misconduct. The charged conduct took place over a period from about 2002 to 2005, and involved about 14 different incidents. Following the arrests, bond for Defendant JEROME FINNIGAN was set at $3,000,000.00, bond for Defendant KEITH HERRERA was set at $3,000,000.00, bond for Defendant THOMAS SHERRY was set at $2,000,000.00, and bond for Defendant CARL SUCHOCKI was set at $1,500,000.00.

After these initial charges, the investigation continued. More than a dozen police officers testified before the Cook County grand jury and implicated Special Operations Section officers for the conduct described above. These police officers undoubtedly feared that they also would be prosecuted, and broke the sacred CPD code of silence.

On or about December 4, 2006, a second round of charges led to the arrest of three additional SOS officers: Frank Villareal, Margaret Hopkins, and James McGovern. In addition, even more charges were filed against JEROME FINNIGAN, KEITH HERRERA, THOMAS SHERRY and CARL SUCHOCKI. The second round of charges were similar to the first, and included, *inter alia*, multiple counts of home invasion, armed violence, aggravated kidnaping, narcotics delivery, burglary, and official misconduct.

## Facts

8. On or about July 27, 2004, at about 4:00 pm, Defendant-Officers HERRERA and HURLEY went to Plaintiff's residence at or near 3934 South California, City of Chicago.

9. Plaintiff lived in the 2nd floor apartment of that building with his girlfriend and 2-year-old son.

10. The building also had a first floor apartment, and a basement apartment.

11. In the afternoon time, Plaintiff was returning home from the store.

12. After he arrived, he parked his car.

13. When Plaintiff entered the yard, he noticed police officers, Defendants in this case, in his yard. The officers approached Plaintiff.

14. Plaintiff was under arrest and not free to leave.

15. Defendant-Officers did not have an arrest warrant, probable cause, reasonable suspicion, consent, or any other lawful basis to stop, detain, or search Plaintiff.

16. The officers took Plaintiff into his home. Already in his home were numerous other officers.

17. Plaintiff asked the police if they had a search warrant. Defendant-Officers responded that they did not need a search warrant.

18. Defendant-Officers searched the entire house.

19. Defendant-Officers did not have a search warrant, probable cause, exigent circumstances, or any other legal justification to search Plaintiff's home.

20. During the course of the search, Defendant-Officers recovered narcotics and put them in a Nike shoe box which had a store receipt in it that was traceable to Plaintiff. Defendant-Officers later planted these drugs, in the shoe box with the receipt, on another person at a different location.

21. Defendant-Officers removed about $12,000.00 in cash from Plaintiff's safe. The money was never inventoried and Plaintiff was not given a receipt.

22. During the course of the search, Defendant-Officers also damaged a dresser that Plaintiff had just purchased that was valued over $2,000.00.

23. In addition to illegally searching Plaintiff's 2nd floor apartment, the Defendant-Officers also searched in the basement of the building.

24. In the basement, the Defendant-Officers recovered a gun. Even though there was

no evidence connecting this gun to Plaintiff, they ultimately charged Plaintiff for "failure to register" the weapon.

25. As part of their pattern and practice, the Defendant-Officers told Plaintiff that they were not going to charge him with anything as long as they gave him the name of a person who had money. The Defendant-Officers wanted this information so they could go to that person's house and steal money and drugs, and then threaten the person with prison unless they gave the officers the name of yet somebody else who had money – who they could then go steal from, and so on and so on.

26. Plaintiff gave the Defendant-Officers the name of a person Plaintiff knew to be an immigrant who had money.

27. The Defendant-Officers demanded that Plaintiff take them to the person's house, and Plaintiff did so.

28. Plaintiff, in custody, went with the Defendant-Officers to the person's house.

29. Plaintiff and Defendant-Officers waited at the home for several hours.

30. The Defendant-Officers were really desperate to steal more money.

31. Later, when Plaintiff was at the police station being processed, Defendant-Officers told Plaintiff that they were going to be coming back to Plaintiff's house all the time, and they would be expecting Plaintiff to give them information about more people that they could rob and steal from.

32. Plaintiff was afraid of what these officers would going to do to him if they came back to his house after Plaintiff was released. Plaintiff was fearful that the officers would plant something on him, and/or cause him to go to prison.

33. Terrified of what the police could do to him, immediately after Plaintiff was released from custody, he began planning to move out-of-state to Mississippi, which he did within days of being released.

34. When Plaintiff was packing to move, a neighbor told him that the police had come by the house looking for him. Now even more afraid of the police and what they could do, Plaintiff knew he had to leave Chicago immediately, and did.

35. In fear for his life and freedom, Plaintiff lived in Mississippi for about the next 11 months; he only returned to Chicago after Hurricane Katrina caused him to leave Mississippi.

36. After he returned to Chicago, Plaintiff was contacted by the Cook County State's

Attorneys Office about this incident as part of their investigation into SOS misconduct. Pursuant to the investigation, Plaintiff had conversations with Defendant-Officer HERRERA which were recorded under a court order. In the conversations, Defendant-Officer HERRERA admitted to much of the above-described events of July 27, 2007. Also, when Plaintiff told Defendant-Officer HERRERA that he was concerned about retaliation from the person that Plaintiff had told the Defendant-Officers about (and the officers planted drugs on), Defendant-Officer HERRERA told Plaintiff, "I'll fucking knock him out today dude."

37. Ultimately, the case against Plaintiff for failure to register was dismissed on or about February 23, 2006.

38. Defendant-Officers made out false and incomplete official reports and gave a false and incomplete version of the event to other police officers investigating the incident in order to cover up their misconduct.

39. Each individual Defendant-Officer acted willfully, wantonly, maliciously, oppressively, and with a conscious disregard and deliberate indifference to Plaintiff's rights.

40. As a direct and proximate result of the acts of the Defendants described above, Plaintiff has suffered and continues to suffer damages including loss of physical liberty, emotional distress, pain and suffering, and monetary losses including moving and relocation expenses, attorney's fees, and property damage.

## COUNT I
### (42 U.S.C. § 1983 – False Arrest/Imprisonment)

41. Plaintiff realleges paragraphs 1 through 40 as if fully set forth herein.

42. The actions of Defendant-Officers in arresting Plaintiff without any legal justification or probable cause violated his Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable searches and seizures.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against said Defendant-Officers;

b) Award Plaintiff compensatory and punitive damages, as determined at trial;

c) Award Plaintiff attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and

equitable.

## COUNT II
### (42 U.S.C. § 1983 – Illegal Search of Home)

43. Plaintiff realleges paragraphs 1 through 40 as if fully set forth herein.

44. The actions of Defendant-Officers in searching Plaintiff's home without any legal justification violated his Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable searches and seizures.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against said Defendant-Officers;

b) Award Plaintiff compensatory and punitive damages, as determined at trial;

c) Award Plaintiff attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT III
### (42 U.S.C. § 1983 – Substantive Due Process, Abuse of Power)

45. Plaintiff realleges paragraphs 1 through 40 as if fully set forth herein.

46. The actions of the Defendant-Officers was an egregious arbitrary abuse of government power that shocks the conscience.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against said Defendant-Officers;

b) Award Plaintiff compensatory and punitive damages, as determined at trial;

c) Award Plaintiff attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT IV
### (42 U.S.C. § 1983 – Civil Conspiracy)

47. Plaintiff realleges paragraphs 1 through 40 as if fully set forth herein.

48. Defendant-Officers knowingly and intentionally schemed and worked together in a common plan to illegally arrest Plaintiff, illegally search his house, and steal money from him.

49. Defendant-Officers then conspired and acted together to cover up their misconduct.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against said Defendant-Officers;

b) Award Plaintiff compensatory and punitive damages, as determined at trial;

c) Award Plaintiff attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT V
### (42 U.S.C. § 1983 – *Monell* Claim against the City of Chicago)

50. Plaintiff realleges all of the above paragraphs and counts, as if fully set forth herein.

51. The incident alleged in this complaint was part of a pattern and practice of gross abuse of power by SOS officers, who essentially ran a robbery ring which entailed illegally entering person's homes; conducting illegal searches of homes, vehicles, and persons; false arrests; stealing narcotics, jewelry, weapons, money (hundreds of thousands of dollars) and other valuables; planting drugs on innocent people; as well as physical abuse, intimidation, and threats.

52. At all times material to this Complaint, there existed in the City of Chicago the following practices, policies and customs:

- a. stopping, detaining, arresting, and searching persons without a warrant, probable cause, reasonable suspicion, consent, or any other legal basis;

- b. searching person's homes without a warrant, probable cause, reasonable suspicion, consent, or any other legal basis;

- c. denial of substantive due process, abuse of legal process, malicious prosecution, and filing of false charges against innocent persons;

- d. preparing false and incomplete police reports, and/or not preparing police reports, to cover up police misconduct including unconstitutional searches

and seizures;

e. filing false charges and pursuing baseless prosecutions in order to protect police officers from claims of improper conduct and avoid liability;

f. a *code of silence* in which police officers fail to report police misconduct;

g. said *code of silence* also includes police officers either remaining silent or giving false and misleading information during trials and official investigations to cover up misconduct, and protect themselves and other officers;

h. failure to adequately train, supervise and discipline police officers in the categories and fields of police work addressed in sub-paragraphs a - e above;

i. failure to adequately investigate citizen complaints against police officers;

j. failure to adequately discipline police officers for misconduct;

k. through the Office of Professional Standards (OPS), conducting inadequate and deficient investigations of citizen complaints of police misconduct in which an officer is disciplined in an extremely low number of cases, thereby encouraging even more police misconduct;

53. The actions of the Defendant-Officers as alleged in this Complaint were done pursuant to, and as a result of, one or more of the above *de facto* practices, policies and customs of the City of Chicago, the Chicago Police Department, and its police officers.

54. One or more of the following entities, authorities and officials are responsible for the policies, practices and customs alleged above: the Mayor of Chicago, the City Council, the aldermen, the Chicago Police Department, the Chicago Police Board (to which the City of Chicago has delegated *de jure* final policy-making authority for the Chicago Police Department); the members of the Chicago Police Board, the Office of Professional Standards, and Superintendent Phil Cline (to whom the City of Chicago has delegated *de facto* final policy-making authority for the Chicago Police Department regarding the matters complained of herein).

55. The practices, policies and customs described above are widespread, permanent and well-settled, and were known, or should have been known, to the municipal policy-makers of the City of Chicago.

56. The municipal policy-makers of the City of Chicago acted with deliberate

-8-

indifference to the rights of Plaintiffs in maintaining, overlooking and preserving the unconstitutional practices, policies and customs delineated above.

57. By their inaction and failure to correct the above-described practices, policies and customs, municipal policy-makers tacitly approve and thus indirectly authorize the type of misconduct Plaintiff complains of herein.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against the City of Chicago;

b) Award Plaintiff compensatory damages, as determined at trial;

c) Award Plaintiff attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT VI
### (State Law Claim for Malicious Prosecution)

58. Plaintiff realleges paragraphs 1 through 40 as if fully set forth herein.

59. Defendant-Officers instituted false charges against Plaintiff for failure to register a weapon.

60. There was not probable cause for these charges

61. The case was dismissed by the prosecution.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against said Defendant-Officer;

b) Award Plaintiff compensatory and punitive damages, as determined at trial;

c) Award Plaintiff costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT VII
### (State Law Claim for Intentional Infliction of Emotional Distress)

62. Plaintiff realleges paragraphs 1 through 40 as if fully set forth herein.

63. Defendants-Officers' conduct was extreme and outrageous.

64. Defendant-Officers intended to inflict severe emotional distress, or knew that there was at least a high probability that their conduct would inflict severe emotional distress.

65. Defendant-Officers' conduct caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against said Defendant-Officer;

b) Award Plaintiff compensatory and punitive damages, as determined at trial;

c) Award Plaintiff costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT VIII
### (State Law *Respondeat Superior* Claim)

66. The acts of the individual Defendant-Officers described in the supplementary state claims specified above, were willful and wanton, and committed in the scope of their employment.

67. As principal, the Defendant CITY OF CHICAGO is liable for its agents' actions under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff demands judgment against the CITY OF CHICAGO, and such other and additional relief that this Honorable Court deems just and equitable.

## COUNT IX
### (Indemnification Claim pursuant to 745 ILCS 10/9-102)

68. Plaintiff realleges all of the above paragraphs and counts as if fully set forth herein.

69. The acts of the individual Defendant-Officers described in the above claims were willful and wanton, and committed in the scope of their employment.

70. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant CITY OF CHICAGO is liable for any judgments in this case arising from the actions of the Defendant-Officers.

WHEREFORE, Plaintiff asks that this Honorable Court order Defendant CITY OF

CHICAGO to indemnify the Defendant-Officers for any judgment entered in this case arising from the actions of the Defendant-Officers.

**Plaintiff demands trial by jury on all counts.**

Respectfully submitted,

*[signature]*

Lawrence V. Jackowiak
*Attorney for Plaintiff*

Lawrence V. Jackowiak
Law Offices of Lawrence V. Jackowiak
20 North Clark Street, Suite 1700
Chicago, Illinois 60602
(312) 795-9595
Attorney No. 6231003