**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANTHONY CASTRO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 07-cv-0931 |
| ) | |
| CITY OF CHICAGO, ET AL., ) | Judge Robert M. Dow, Jr. |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

On February 16, 2007, Plaintiff Anthony Castro filed a nine-count complaint [1] against the City of Chicago ("the City"), Chicago Police Officers Jerome Finnigan, Keith Herrera, Carl Suchocki, Cheryl Hurley, as administrator of the estate of John Hurley, and Unknown Chicago Police Officers. The Individual Defendants moved to dismiss [129] the complaint in its entirety, and the City of Chicago filed a motion to dismiss and to join Individual Defendants' Motion [131]. For the reasons set forth below, the Court grants in part Defendants' motions to dismiss [129 and 131] and permits the City of Chicago to join Individual Defendants' motion to dismiss.

**I.    Background**[1]

On July 27, 2004, Castro arrived at his Chicago home to find City of Chicago police officers in his yard and second-floor apartment, where his girlfriend and baby were being held. The officers, who did not have a search warrant, immediately arrested Castro and searched his home. According to the complaint, the officers found narcotics during the search, which they put into a Nike shoe box, and a gun. The officers also took approximately $12,000.00 in cash from a

---

[1] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

safe in Plaintiff's house (without inventorying the money or giving Plaintiff a receipt) and damaged a dresser valued at more than $2,000.00. Plaintiff was charged with violation of a City of Chicago ordinance for failing to register the gun. According to the complaint, the officers told Plaintiff that they would not charge him with anything if he provided the name of someone who had money, guns or drugs. Plaintiff provided a name, and, with Castro in custody, the officers went to the second home where they stole more money and planted the drugs taken from Castro's residence. The officers then brought Plaintiff to the police station, where he was processed.

According to Plaintiff, the officers told him they would come back to his house all the time and would expect Plaintiff to give them additional information about people they could rob. He also alleges that the officers falsified official reports and gave false and incomplete versions of the incident to other officers investigating the incident and that a neighbor told him the police came by his apartment shortly after the incident. Plaintiff alleges that he feared losing his freedom, safety or life. Shortly after he was released from custody on the ordinance violation, Castro moved to Mississippi. He returned to Chicago when his family's home was destroyed by Hurricane Katrina. When he returned to Chicago, Plaintiff was contacted by the Cook County State's Attorneys' Office and participated in the investigation of the SOS officers. The ordinance violation was dismissed by prosecutors on February 23, 2006.

According to Plaintiff, only after the arrest of Defendant Officers in late 2006 did he feel safe to come forward and file the present lawsuit. Thus, on February 16, 2007, Plaintiff Anthony Castro filed a nine-count complaint [1] against the City of Chicago ("the City"), Chicago Police Officers Jerome Finnigan, Keith Herrera, Carl Suchocki, Cheryl Hurley, as administrator of the estate of John Hurley, and Unknown Chicago Police Officers. Count I of the complaint alleges

violations under 42 U.S.C. § 1983 for a false arrest/imprisonment pursuant to the Fourth Amendment against "Defendant-Officers;" Count II alleges violations under § 1983 for illegal search of a home pursuant to the Fourth Amendment against "Defendant-Officers;" Count III alleges violations under § 1983 for substantive due process/abuse of power pursuant to the Fourth Amendment against "Defendant-Officers;" Count IV alleges violations under § 1983 for a civil conspiracy against "Defendant-Officers;" Count V alleges a *Monell* claim under 42 U.S.C.§ 1983 against the City of Chicago ("City"); Count VI alleges a state law claim for malicious prosecution against "Defendant-Officers;" Count VII alleges a state law claim for intentional infliction of emotional distress against "Defendant-Officers;" Count VIII alleges a state law respondeat superior claim against the City; and Count IX is an indemnification claim pursuant to 745 ILCS 10/9-102 against the City.

## II.     Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), such that the defendant is given "fair notice of the way the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed 2d 80 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a

3

claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

**III.    Analysis**

Defendants seek dismissal of Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing, among other things, that (i) that Plaintiff's federal claims are time-barred as a matter of law and (ii) Plaintiff's malicious prosecution claim fails to state a claim for which relief may be granted. As set forth below, the Court reaches only the first argument.

**A.    Statute of Limitations**

The Seventh Circuit recently has been very clear in its assessment of the limitations periods: "[O]n the subject of the statute of limitations * * * * [w]hat a complaint must plead is enough to show that the claim for relief is plausible. Complaints need not anticipate defenses and attempt to defeat them. The period of limitations is an affirmative defense * * * * We have held many times that, because complaints need not anticipate defenses, Rule 12(b)(6) is not designed for motions under Rule 8(c)(1)." *Richards v. Mitcheff*, 696 F.3d 635, 637-38 (7th Cir. 2012) (internal citations omitted); see also *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623 (7th Cir. 2003); *United States v. Northern Trust Co.,* 372 F.3d 886 (7th Cir. 2004); *Xechem, Inc. v. Bristol—Myers Squibb Co.*, 372 F.3d 899 (7th Cir. 2004). In *Mitcheff*, the Court concluded by reminding judges to "respect the norm that complaints need not anticipate or meet potential affirmative defenses."

4

Despite these admonitions, the Seventh Circuit also has consistently reaffirmed that a plaintiff may plead himself out of court by alleging facts that are sufficient to establish a statute-of-limitations defense. See *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675 (7th Cir. 2009) (dismissal is appropriate where it is "clear from the face of the amended complaint that it [was] hopelessly time-barred"); *Andonissamy v. Hewlett–Packard Co.,* 547 F.3d 841, 847 (7th Cir. 2008) (stating that "[a] statute of limitations defense, while not normally part of a motion under Rule 12(b)(6), is appropriate where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations") (internal quotations omitted); *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.2d 623, 626 (7th Cir. 2003) ("A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense"); *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)."); see also *Baldwin v. Metro. Water Reclamation Dist. Of Greater Chicago*, 2012 WL 5278614, at *1 ("A plaintiff whose allegations show that there is an airtight defense has pleaded himself out of court, and the judge may dismiss the suit on the pleadings * * * .") (quoting *Mitcheff*, 696 F.3d at 637). Indeed, in the present case, Plaintiff has pled all of the necessary facts to resolve this issue, leaving the Court to consider a dispositive point of law—mainly, whether a fear of reprisal is sufficient to toll the limitations period in § 1983 cases. Where a plaintiff has pled facts which arguably establish an affirmative defense and both sides have briefed the issue, practical considerations—such as discovery costs, attorneys fees, and judicial efficiency—provide courts with ample reasons to resolve a dispositive point of law early in a case, whether the parties have

5

briefed the question as a 12(b)(6) or a 12(c) issue. In either case, a court's decision rests on the pleadings and whether a plaintiff has affirmatively pled himself out of court.

In Defendants' estimation, Plaintiff pled himself out of court as to his claims against the individual officers by including certain calendarial facts in his amended complaint: (i) Plaintiff was arrested on July 27, 2004; (ii) the case against Plaintiff for failing to register his gun was dismissed on or about February 23, 2006; and (iii) Plaintiff filed his complaint, with the assistance of counsel, on February 16, 2007 (more than two and a half years after his arrest). The length of the limitations period for a § 1983 action is determined by reference to state law personal injury torts. *Owens v. Okure*, 488 U.S. 235, 240-41, 249-50 (1989) (quoting and clarifying *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)). In Illinois, the pertinent limitations provision requires a would-be plaintiff to bring suit within two years of a cause of action's accrual. 735 ILCS 5/13-202; *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007). The limitations clock on an action brought pursuant to § 1983 for false arrest "begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato* 549 U.S. 384, 397. The limitations clock on the remainder of Plaintiff's federal claims (illegal search, conspiracy, due process, and *Monell*) began to run at approximately the same time. For Plaintiff, that means that the limitations period began to run on or about July 27, 2004. See *id.* ("a false imprisonment ends once the victim becomes held pursuant to [legal process] – when, for example, he is * * * arraigned on charges").

Plaintiff concedes that his federal causes of action against the individual officer Defendants accrued more than two years before he filed his lawsuit; however, he maintains that Defendants are equitably estopped from asserting a limitations defense or that he is entitled to equitable tolling. Although not entirely clear from precedent, it appears that federal law applies

6

to an equitable estoppel claim in these circumstances and that state law applies to an equitable tolling claim. See *Smith v. City of Chicago Heights,* 951 F.2d 834, 840–41 (7th Cir. 1992); see also *Hobbs v. Cappelluti,* --- F. Supp. 2d ---, 2012 WL 4499227, at *12 (N.D. Ill. Sept. 28, 2012) ("Federal law applies to Hobbs' equitable estoppel claim and state law applies to his equitable tolling claim."). However, as set forth below, whether the Court applies federal or state estoppel or tolling law, the result in the same in this instance.

        1.        *Equitable estoppel*

"Equitable estoppel prevents a party from asserting the expiration of the statute of limitations as a defense when that party's improper conduct has induced the other into failing to file within the statutory period." *Ashafa v. City of Chicago,* 146 F.3d 459, 462 (7th Cir. 1998). Federal estoppel law "focuses on whether the defendant acted *affirmatively* to stop or delay the plaintiff from bringing suit within the limitations period" (*id.* (quoting *Smith,* 951 F.2d at 841)(emphasis in original)), and "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time." *Cada,* 920 F.2d at 451. To invoke equitable estoppel, "a plaintiff must show not only misconduct by the defendants, but also that he actually and reasonably relied on the misconduct." *Ashafa,* 146 F.3d at 463. Once the circumstance giving rise to the estoppel is removed the plaintiff must file suit. See *Shropshear v. Corp. Counsel of City of Chicago,* 275 F.3d 593, 597–98 (7th Cir. 2001).

Castro argues that Defendants' deliberate and blameworthy conduct, namely their use of threats and force during his arrest and while he was in custody, coupled with his neighbor's claim that the officers stopped by his apartment after his release, equitably estops Defendants from asserting a statute of limitations defense. For equitable estoppel to apply, Plaintiff must allege "efforts by * * * the defendant[s]—above and beyond the wrongdoing upon which [his]

7

claim[s] [are] founded—to prevent [him] from suing in time." *Cada,* 920 F.2d at 451; see *Smith,* 951 F.2d at 841. Castro relies on *Cook v. City of Chicago,* 2008 WL 1883437, at *1 (N.D. Ill. April 25, 2008), to support his equitable arguments. In *Cook*, the plaintiff alleged that police officers illegally entered his home and beat and threatened him in front of his family. *Id.* When he reported the incident to the Chicago Police Department, an investigator told him that if he pursued his complaint the police would plant drugs on him and cause him to lose his job. *Id.* Cook delayed filing his § 1983 claims until after the offending officers were arrested on unrelated grounds. The court concluded that the investigator's threats qualified as blameworthy conduct and, as a result, the officers were estopped from arguing a statute of limitations defense. *Id.* at 2.

Unlike the plaintiff in *Cook,* Castro fails to allege that defendants took affirmative steps "above and beyond" those that support his claims to prevent him from filing the instant lawsuit. See *Ramirez v. City of Chicago,* 2009 WL 1904416, at *5 (N.D. Ill. July 1, 2009) (finding that "a general fear of police reprisal" is not enough for equitable estoppel to apply); *Reyes v. City of Chicago,* 585 F. Supp. 2d 1010, 1015 (N.D. Ill. 2008) (distinguishing *Cook* and dismissing claims as time barred where "there [were] no allegations describing any steps taken by defendants after the initial incident that prevented plaintiffs from filing a lawsuit"). Plaintiff spends much of his response brief detailing the conduct that occurred during his arrest and custody, but that conduct does not go "above and beyond" his claims; rather, it forms the basis of his claims. Plaintiff has failed to show active steps to prevent Plaintiff from filing his lawsuit in time and has failed to show actual and reasonable reliance on Defendants' conduct and representations. Plaintiff's assertions in his response brief that he witnessed the Defendant Officers handcuff his girlfriend and threaten to shoot his dog, and that the Defendant Officers

8

illegally searched his apartment, stole money, and planted a gun on him, are not active steps taken to prevent Plaintiff from suing in time; rather, they are a recitation of the facts of the underlying incident. The facts of the underlying incident cannot form the basis for an equitable estoppel exception. See *Mitchell v. Donhcin*, 286 F.3d 447, 450 (7th Cir. 2002) (finding equitable estoppel "denotes efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent, from fraud or deception, the plaintiff from suing in time"). Similarly, Plaintiff's reference to Officer Herrera's offer to "knock out" the other victim that Plaintiff identified to the police cannot be construed as an active threat to prevent Plaintiff from filing his lawsuit. Officer Herrera offered to "knock out" a third party, not Plaintiff.

Plaintiff pleads two additional facts that he argues rise to the level of "active steps" taken by the Defendant Officers to prevent Plaintiff from filing his lawsuit in time. First, Plaintiff pleads that while he was packing to move to Mississippi (immediately following the incident in question), a neighbor told him that "the police had come by the house looking for him." See FAC at ¶ 34. Plaintiff does not indicate that the police officers who stopped by the house were Defendant Officers, nor that these unnamed officers relayed any threats through the neighbor. Because Plaintiff did not identify Defendant Officers as the officers who came to his house, and there is no allegation that these officers made any threats, this fact cannot be deemed an active step by Defendant Officers to prevent Plaintiff from suing in time, or at all.

Plaintiff also alleges that he moved to Mississippi right after the incident in question. See FAC at ¶ 33 ("Terrified of what the police could do to him, immediately after Plaintiff was released from custody, he began planning to move out-of-state to Mississippi, which he did within days of being released."). Even if the Court were to conclude that the unknown officers'

9

actions constituted an "active" step—which the Court declines to do—once Plaintiff moved to Mississippi ("within days" of the incident and more than two years before the running of the statute of limitations), the "fear of reprisal" impediment was removed and he easily could have brought suit within the limitations period. As the Seventh Circuit has stated, "once the circumstance giving rise to the estoppel is removed * * * the filing of the lawsuit cannot be delayed indefinitely." *Shropshear v. Corporation Counsel of the City of Chicago*, 275 F.3d 593, 599 (7th Cir. 2001).

Plaintiff also pleads that while he was at the police station following his arrest, the Defendant Officers told Plaintiff they would "be coming back to [his] house all the time, and they would be expecting Plaintiff to give them information about more people that they could rob and steal from." See FAC at ¶ 31. While this fact might indicate a sinister plot of robbery and extortion developed by Defendant Officers, it is not an active step taken by the Defendant Officers to prevent Plaintiff from suing. Equitable estoppel "denotes efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent * * * the plaintiff from suing in time." *Donhcin*, 286 F.3d at 450. Defendant Officers' threat towards Plaintiff at the police station, like the conduct within Plaintiff's home, does not rise above and beyond the wrongdoing upon which Plaintiff's claim is founded; instead, the case law treats it as a component of the wrongdoing itself.

As pled in the complaint, Defendant Officers' only threats toward Plaintiff were made on July 27, 2004, the date of the incident. The complaint is devoid of allegations that Defendant Officers, at any time following the incident, took any steps or made any threats to prevent Plaintiff from filing his lawsuit. The only possible step that could be attributed to any officer— though not Defendant Officers in particular—was the neighbor's claim that "police" had come

10

by looking for him within days of the incident. Yet Plaintiff also moved within days of the incident, eliminating any fear that officers would come by his home in Chicago. At that point, Plaintiff should have brought suit. Furthermore, Plaintiff has failed to point to any controlling precedent holding that a general fear of police reprisal is sufficient to equitably toll claims brought against police officers for misconduct. Indeed, if that were true, any plaintiff bringing a § 1983 claim against law enforcement simply could assert a generalized fear of reprisal in order to revive an untimely claim. See, *e.g., Ramirez,* 2009 WL 1904416, at *5; see also *Czemerynski v. Wilson,* 1993 WL 53578, at *1 (10th Cir. 1993) (unpublished) (indicating that a conclusory statement by an inmate about fear of retaliation by prison officials against the inmate was not sufficient to toll the statute of limitations); *Little v. Peach County School Dist.,* 2009 WL 198003, at *5 (M.D. Ga. 2009) (stating that "the Eleventh Circuit Court of Appeals has stated that a 'purported fear of retaliation * * * is not a ground for equitable tolling'") (quoting in part *Carter v. West Publ'g Co.,* 225 F.3d 1258, 1264 (11th Cir. 2000)). Simply put, if statute of limitations law allowed for equitable estoppel based on threats made by officers during the underlying incident, statutes of limitations in the § 1983 landscape would be, practically speaking, extended indefinitely and thus effectively eviscerated.

    2.  *Equitable tolling*

  Where a limitations period is equitably tolled, the statute of limitations ceases to run for a period of time. See, *e.g.*, *IPF Recovery Co. v. Ill. Ins. Gaur. Fund*, 826 N.E.2d 943, 947-48 & n.5 (Ill. App. Ct. 2005) ("equitable tolling is an exception to the general rule that a statute of limitations is not tolled absent authorization from a statute"). Although the accrual analysis in a § 1983 case is governed by federal law, the tolling analysis is governed by state law. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006); *Shropshear v. Corp. Counsel of the City of Chicago*,

11

275 F.3d 593, 596 (7th Cir. 2001). The Seventh Circuit has stated that equitable tolling "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing." *Singletary v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago,* 9 F.3d 1236, 1241 (7th Cir. 1993). Illinois Supreme Court precedent holds that "[e]quitable tolling * * * may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way ." *Clay v. Kuhl,* 727 N.E.2d 217, 223 (Ill. 2000); *Ciers v. O.L. Schmidt Barge Lines, Inc.*, 675 N.E.2d 210, 214 (Ill. App. Ct. 1996) ("Equitable tolling may be appropriate if defendant has actively misled plaintiff; plaintiff 'in some extraordinary way' has been prevented from asserting his rights; or plaintiff has timely asserted his rights mistakenly in the wrong forum."). As noted by the Seventh Circuit and the lower courts, the Illinois Supreme Court's "position appears to conflate the doctrines of equitable tolling and equitable estoppel." *Richards v. Burgett, Inc.,* 2011 WL 6156838, at *5 (N.D. Ill. Dec. 12, 2011) (citing *Hollander v. Brown,*457 F.3d 688, 694 n. 3 (7th Cir.2006) ("Illinois cases appear, at times, to use 'equitable estoppel' interchangeably with the related principle of equitable tolling")); *Fidelity Nat'l Title Ins. Co. of N.Y. v. Howard Sav. Bank,* 436 F.3d 836, 839 (7th Cir. 2006) ("The Illinois cases that mention the term [equitable tolling] seem to mean by it equitable estoppel"). Whether the Illinois Supreme Court would recognize a distinction between equitable tolling and equitable estoppel remains unresolved. See *Hollander,* 457 F.3d at 694 n. 3; *Fidelity Nat'l Title Ins. Co. of N.Y.,*436 F.3d at 839. In any event, Illinois courts teach that equitable tolling "must be applied with caution." *Clay,* 727 N.E.2d at 223.

As demonstrated above, if Illinois courts conflate equitable tolling with equitable estoppel, Plaintiff has failed to show that Defendants played a direct role in preventing him from

filing a law suit. As previously set forth, fear of reprisal is not enough; there must be something more. Plaintiff makes no specific allegations as to any actions that Defendants took after his arrest and custody; he alleges only that "police officers" came by his house. In any event, Plaintiff moved shortly after his arrest. Even if the Court were to find that Plaintiff's concern about the officers coming back to his home was the "something more" needed, Plaintiff's move eliminated any fear of the officers coming back to his home. Yet Plaintiff did not file his lawsuit until more than two years had passed after his move.[2]

If, on the other hand, Illinois courts view equitable tolling as the Seventh Circuit does, then the limitations period also can be tolled against a defendant who did not mislead the plaintiff or take active steps to prevent a plaintiff from suing if the plaintiff faced an extraordinary barrier to asserting his rights in a timely fashion or if through no fault or lack of diligence on his part a plaintiff was unable to sue. Extraordinary barriers include legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence. *Thede v. Kapsas,* 897 N.E.2d 345, 351 (Ill. App. Ct. 2008). None of these extraordinary barriers appears to exist in this case, as Plaintiff has pointed only to Defendant Officers' conduct as the reason why he could not sue within the statute of limitations. Because the Court has determined that Defendants' blameworthy conduct was part and parcel of the underlying allegations, Plaintiff's equitable tolling argument fails for the same reasons as his equitable estoppel argument.

Given the Court's conclusion that Plaintiff's existing complaint is time barred and that neither equitable tolling nor estoppel operate to rescue Plaintiff's untimely filing, it may be the case that the Defendant Officers will escape the need to answer the egregious actions that they

---

[2] Plaintiff's arrest occurred on July 27, 2004, and this lawsuit was filed on February 16, 2007, more than six months late. Plaintiff pled in his complaint that he moved to Mississippi "within days of being released."

13

are alleged to have perpetrated, at least as those alleged actions relate to Plaintiff's federal claims.[3] But the Court may not extend the limitations period or distort the law of tolling and/or estoppel on the basis of its (or anyone else's) notions of rough justice or just desserts. See, *e.g.*, *Lee v. Cook County, Ill.*, 635 F.3d 969, 972 (7th Cir. 2011). With that said, dismissal of Plaintiff's federal claims will be without prejudice at this juncture, and Plaintiff will be given leave to replead within twenty-one days of the date of this order if he believes that, consistent with Rule 11, he can provide additional allegations which give rise to the "something more" (beyond a fear of reprisal) that is necessary to satisfy the equitable estoppel or tolling standards. See *Smith v. Union Pac. R.R.*, 474 Fed. Appx. 478, 481 (7th Cir. Apr. 5, 2012) (explaining that after a dismissal on grounds of untimeliness, "the plaintiff is ordinarily entitled to at least one opportunity to cure the problem through amendment and pleading").

  B.  **State Law Claims**

Because the Court grants Defendants' motions to dismiss as to the each of Plaintiff's federal claims (Counts I through V) over which it has original jurisdiction, it must now address whether to retain jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3). In addition to the federal claims, Plaintiff has asserted state law claims for malicious prosecution, intentional infliction of emotional distress, respondeat superior claim against the City, and an indemnification claim pursuant to 745 ILCS 10/9-102 against the City.

The Seventh Circuit consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th

---

[3] Although not set out in the pleadings, it is matter of public record that two Defendants, Finnegan and Herrera, have been convicted of felony offenses and sentenced to prison terms on account of their misconduct as police officers. See *United States v. Finnigan, et al.*, No. 07cr634-1 (Finnegan) and 07cr634-2 (Herrera) (N.D. Ill.).

14

Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Finding no justification for departing from that "usual practice" in this case,[4] if Plaintiff does not (or cannot) successfully replead his federal claims, Plaintiff's state law claims will be dismissed without prejudice to re-filing in state court within the one-year window provided by Illinois law. See *In re Repository Technologies, Inc.*, 601 F.3d 710, 724-25 (7th Cir. 2010); *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008) ("When the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts.").

---

[4] In *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court. See 735 ILCS 5/13-217; *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). Dismissal without prejudice also is appropriate here because substantial judicial resources have not been committed to the state law counts of Plaintiff's complaint. *Wright*, 29 F.3d at 1251.

15

**IV.     Conclusion**

For the following reasons, the Court grants in part Defendants' motions to dismiss [129 and 131], and permits the City of Chicago to join Individual Defendants' motion to dismiss. Plaintiff's § 1983 claims (Counts I through V) against all Defendants are dismissed as time barred.  The dismissals are without prejudice at this time.  Plaintiff is given 21 days to replead if he believes that he can cure the deficiencies identified above.  Should Plaintiff chose not to replead or be unable to cure the deficiencies, the remainder of Plaintiff's claims—all state law claims—will be dismissed without prejudice with leave to re-file in state court within the one-year window provided by Illinois law.

Dated:  February 1, 2013  _____
Robert M. Dow, Jr.
United States District Judge