**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANTHONY CASTRO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 07 CV 931 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| CITY OF CHICAGO, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM ORDER AND OPINION**

Before the Court are Plaintiff's amended motion for leave to file an amended complaint [173] and Defendant City of Chicago's motion to bifurcate § 1983 *Monell* claim against it and to stay trial on that claim [158]. As explained more fully below, Plaintiff's motion [173] is denied and Defendant City of Chicago's motion [158] is denied as moot. This matter is set for status at 9:00 a.m. on October 16, 2013.

**I.    Background**

On February 16, 2007, Plaintiff Anthony Castro filed a nine-count complaint [1] against the City of Chicago ("the City"); four former Chicago Police Officers, Jerome Finnigan, Keith Herrera, Carl Suchocki, and Thomas Sherry; Unknown Chicago Police Officers; and Cheryl Hurley, as administrator of the estate of former Chicago Police Officer John Hurley. Plaintiff's complaint alleged that on July 27, 2004, the police officer Defendants illegally searched his home, robbed him of approximately $12,000, arrested him on false charges of violating a city ordinance, and threatened him with reprisal if he failed to comply with their future demands for money, drugs, or names of other individuals they could rob. Plaintiff alleged that he was afraid of what the officers were going to do to him when he was released from custody. Plaintiff

alleged that he was so afraid that he immediately began planning a move to Mississippi and in fact moved there "within days" of his release from custody. Plaintiff returned to Chicago eleven months later, after Hurricane Katrina struck Mississippi. The Cook County State's Attorney's Office contacted Plaintiff upon his return to the city, and he participated in its investigation of the police officer Defendants that eventually culminated in their arrests in late 2006. The ordinance violation against Plaintiff was dismissed on February 23, 2006.

Defendants moved to dismiss as time-barred Plaintiff's federal § 1983 claims. See [129] & [131]. The Court granted the motions after concluding that neither equitable estoppel nor equitable tolling operated to save Plaintiff's untimely claims, which were filed some six months after the lapse of Illinois' applicable two-year statute of limitations. See [169] at 7-14. Specifically, the Court concluded that Plaintiff's complaint did not allege that Defendants took any active steps to stop Plaintiff from bringing a lawsuit above and beyond the wrongdoing that formed the basis of Plaintiff's claims. See *id.* at 7-11. The Court also concluded that even if Plaintiff had alleged the requisite "above and beyond" conduct, his move to Mississippi more than two years before he filed suit undermined the potency of the threats against him and removed any barriers to suit. See *id.* at 13. The Court declined to exercise its supplemental jurisdiction over Plaintiff's state-law claims. See *id.* at 14-15. The Court granted Plaintiff twenty-one days in which to cure the deficiencies in his complaint. See *id.* at 14, 16.

Plaintiff initially indicated his inclination to stand on his complaint and appeal the Court's dismissal of his claims. See [170]. He later had a change of heart and filed the instant motion for leave to file an amended complaint [173]. Plaintiff's proposed amended complaint seeks to bolster Plaintiff's allegations about the Defendant officers' threatening behavior. See [173-1]. He seeks to add allegations that Defendant Herrera coerced him to sign a consent-to-

search form by telling him that if he declined he would "have problems"; that Defendant Herrera threatened him that the officer Defendants would come back and "take care of him"; that Defendant Herrera told him that the officer Defendants worked citywide, without supervision, and could destroy his life; and that the other officer Defendants generally echoed these comments "[t]hroughout the incident." [173-1] ¶¶ 79-86. Plaintiff also proposes to add allegations that he "felt kidnaped," *id.* ¶ 71, was fearful that the officer Defendants would physically harm him or his family, *id.* ¶ 89, that the officers' "threats, combined with the Defendants' illegal conduct and apparent lack of fear of getting caught * * * made [him] fear for his safety," *id.* ¶ 90, and that the officer Defendants "promised to return and seemed capable of anything." *id.* ¶ 91. Plaintiff additionally seeks to expand his allegations regarding the police's interaction with his neighbor. In his original complaint, he alleged only that while he was packing to move to Mississippi, "a neighbor told him that the police had come by the house looking for him." [1] ¶ 34. The proposed amended complaint identifies the neighbor as R.F., clarifies that R.F. "recognized the officers as the same officers that had taken Castro away in handcuffs," alleges that the officers had a picture of Plaintiff, and avers that "this subsequent incident [] confirmed Castro's decision to leave and to not return to Chicago." [173-1] ¶¶ 94-98. It further alleges that Castro was still fearful of Defendants when he returned to Chicago after Hurricane Katrina and had to be "persuaded" by the State's Attorney's Office to participate in their investigation. *Id.* ¶¶ 101-02. It also adds additional facts relating to three additional counts Plaintiff seeks to add: a Fourth Amendment claim on behalf of his minor son, A.C.; a civil conspiracy claim on behalf of A.C.; and a RICO claim against all Defendants. The proposed amended complaint does not contain any state law claims and does not name any unknown Defendants. See [173-1].

3

Defendants contend that the Court should deny Plaintiff's motion for leave to amend. The officer Defendants argue that the additional facts alleged in the proposed amended complaint are insufficient to support equitable estoppel. See [183] at 4-7. They also challenge Plaintiff's standing to assert claims on behalf of A.C. and the viability of the proposed RICO claim. See *id.* at 7-14. The City adopts all of the officer Defendants' arguments and further contends that, as a matter of law, Plaintiff cannot state a RICO claim against the City or proceed with his *Monell* claim. See [182] at 2-3.

## II. Legal Standard

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). "Although leave to amend should be freely given, that does not mean it must always be given." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (citation omitted). "District courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Id.* Proposed new claims are considered futile if they would not withstand a motion to dismiss. *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001).

## III. Discussion

### A. Equitable Estoppel

Defendants contend that the facts alleged in the amended complaint fail to support Plaintiff's position that equitable estoppel should operate to permit his untimely § 1983 claims.[1] Thus, they contend, the proposed amendment would be futile because Plaintiff's proposed

---

[1] Although the parties previously argued in terms of both equitable estoppel and equitable tolling, and the Court's previous opinion addressed both doctrines, see [169], the parties at this stage cabin their dispute to whether Defendants should be equitably estopped from asserting the statute of limitations defense. To the extent that they have not abandoned their equitable tolling arguments, the Court for the same reasons as stated in its earlier opinion concludes that equitable tolling is not applicable here.

amended complaint establishes on its face that the claims are barred by the statute of limitations. See *Vargas-Harrison*, 272 F.3d at 974; *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) ("[W]hen a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate.").

As the Court explained in its previous opinion, "equitable estoppel comes into play if the defendant takes active steps to prevent the plaintiff from suing in time." *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001). It "prevents a party from asserting the expiration of the statute of limitations as a defense when that party's improper conduct has induced the other into failing to file within the statutory period." *Ashafa v. City of Chi.*, 146 F.3d 459, 462 (7th Cir. 1999). Equitable estoppel "springs from basic considerations of fairness" and "denotes efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent, by fraud or deception, the plaintiff from suing in time." *Mitchell v. Donchin*, 286 F.3d 447, 450 (7th Cir. 2002) (quotations omitted). "Any deliberate or otherwise blameworthy conduct by the defendant that causes the plaintiff to miss the statutory deadline can be the basis for a defense of equitable estoppel in federal limitations law," which governs even in cases such as this in which this Court "borrows" the statute of limitations from state law. *Shropshear*, 275 F.3d at 597-98.

Equitable estoppel is a broad equitable remedy, but it is not boundless. The Seventh Circuit has emphasized that equitable estoppel cannot apply unless there is a causal link between the conduct alleged as the basis for the estoppel and the plaintiff's delay in filing suit. See, *e.g.*, *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 689 (7th Cir. 2004); *Flight Attendants Against UAL Offset (FAAUO) v. Comm'r*, 165 F.3d 572, 577 (7th Cir. 1999) ("It is implicit in the doctrine that the conduct alleged as the basis for the estoppel have been the

cause of the plaintiff's not suing in time."). Similarly, a plaintiff seeking the benefit of equitable estoppel must demonstrate that he actually and reasonably relied upon the defendant's improper conduct. *Smith v. Potter*, 445 F.3d 1000, 1010 (7th Cir. 2006), *overruled in part on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013); *Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chi. Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999); *Ashafa*, 146 F.3d at 463. Even where both blameworthy conduct and causality are present, "the filing of the suit cannot be delayed indefinitely"; the plaintiff must file suit promptly "once the circumstance giving rise to the estoppel is removed." *Shropshear*, 275 F.3d at 597.

Plaintiff argues that equitable estoppel should apply here because his proposed amended complaint alleges improper conduct by the officer Defendants that goes above and beyond the elements of the causes of action he seeks to assert. He contends that "[t]o prove an unconstitutional search, Plaintiff must only show * * * that the police entered his home without a search warrant or other legal justification. * * * Plaintiff's proposed amended complaint alleges additional facts to show that the Defendants intimidated Plaintiff so he would keep quiet about the search and false arrest." [188] at 2.

Even assuming that Plaintiff is correct on this point and that his supplemental allegations about the officer Defendants' return to his apartment and interaction with his neighbor satisfy the requirement that he plead conduct "above and beyond" that which forms the basis of his claims, Plaintiff has not demonstrated (1) that he reasonably relied on the officer Defendants' conduct and representations or (2) that he acted promptly to file suit once the threats against him abated.

The Court does not take lightly Plaintiff's allegations that he was so fearful of the officer Defendants that he moved to Mississippi. The fact that some of these Defendants have been

6

convicted for their wrongful conduct[2] demonstrates that his fear of reprisal was not unfounded. Nonetheless, Plaintiff's move to a location several hundred miles from the officer Defendants at a minimum significantly diminished the reasonableness of any continued fear of harassment by the officer Defendants. While it would be unfair to place upon plaintiffs an affirmative burden to mitigate the effects of blameworthy conduct by defendants, so too would it be inequitable to permit plaintiffs who do eliminate the effect of defendants' conduct either by their own efforts or purely circumstantial happenstance to delay suit indefinitely. See *Shropshear*, 275 F.3d at 597.

Plaintiff suggests that "[f]iling a lawsuit would provide the Defendants the motive and opportunity to carry out their threat to 'destroy his life' if he made a report or told anyone about the incident," [188] at 3, but lawsuits may be filed anonymously when the potential harm to a plaintiff in proceeding under his own name exceeds the likely harm to the defendants and the general public if the plaintiff proceeds anonymously. See, *e.g.*, *Doe v. City of Chi.*, 360 F.3d 667, 669 (7th Cir. 2004). Indeed, "[t]he danger of retaliation is often a compelling ground for allowing a party to litigate anonymously." *Id.* Additionally, there is no reason that Plaintiff would have had to disclose his whereabouts to timely pursue his federal claims against the officer Defendants. So long as venue is proper and diversity is not the sole basis for jurisdiction (which it is not here), plaintiff's physical location is of minimal importance to the prosecution of a lawsuit. Notably, the Seventh Circuit squarely has held in the employment law context that "a threat to retaliate is not a basis for equitable estoppel," in large part because Title VII provides a cause of action to deter such retaliation. *Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 624 (7th Cir. 2002). Here, too, Plaintiff had a legal remedy in the event that the officers retaliated against him for filing suit: a First Amendment claim for retaliation. See, *e.g.*, *Bivens v. Trent*,

---

[2] Defendants Finnigan and Herrera were convicted of federal felony offenses related to their official misconduct. See *United States v. Finnigan et al.*, No. 07-cr-634-1 (N.D. Ill.) (Finnigan) and No. 07-cr-634-2 (N.D. Ill.) (Herrera).

591 F.3d 555, 559 (7th Cir. 2009). "To allow the use of retaliation as a basis for extending the statute of limitations would not only distort the doctrine of equitable estoppel but circumvent the limitations * * * impose[d] on suits for retaliation, which the plaintiff's argument implies never runs" in cases alleging particularly egregious conduct. *Beckel*, 301 F.3d at 624; *cf. Ramirez v. City of Chi.*, 2009 WL 1904416, at *5 (N.D. Ill. July 1, 2009) (reasoning that if a general fear of police reprisal were sufficient to give rise to equitable tolling, the statute of limitations on § 1983 claims would be all but vitiated).

Other allegations in the proposed amended complaint also undermine Plaintiff's assertions as to the pervasiveness of his fears. First, he alleges that he returned to Chicago less than a year after the incident rather than relocating elsewhere – and did so sufficiently openly and notoriously that the State's Attorney's Office was able to contact him upon his return. He does not allege, however, that the officer Defendants reiterated their threats against him or otherwise took any active steps beyond those contemporaneous with his arrest to prevent him from asserting his claims promptly upon his return. Second, Plaintiff aided the State's Attorney's Office's investigation of the officer Defendants. Plaintiff alleges that the State's Attorney's Office "assured [him that] the officers would eventually be going to jail and could not come after him." [173-1] ¶ 103. Notwithstanding these assurances, Plaintiff delayed filing suit for nearly a year and a half after he returned, for nearly a year after the dismissal of the false charges against him, and for several months after the officer Defendants were indicted and in custody. See [173-1] ¶ 9. Plaintiff's actions do not comport with his allegations that he actually and reasonably believed that the officer Defendants' conduct prevented him from timely filing suit.

Like the original complaint, Plaintiff's proposed amended complaint on its face

establishes that Plaintiff's § 1983 claims are untimely and cannot withstand a motion to dismiss on statute of limitations grounds. The conduct that Plaintiff alleges is egregious, but "the Court may not extend the limitations period or distort the law of * * * estoppel on the basis of its (or anyone else's) notions of rough justice or just desserts." [169] at 14.

### B. Proposed New Claims

Plaintiff's proposed amended complaint seeks to assert three new claims that Plaintiff has not raised previously: (1) a civil RICO claim, (2) a § 1983 claim alleging illegal search on behalf of his minor son, A.C., and (3) a § 1983 claim alleging civil conspiracy on behalf of A.C. "Plaintiff concedes that if the Court rules his original complaint was not timely filed, then his additional RICO count cannot be saved by relation back." [188] at 10. Indeed, for a plaintiff to benefit from the relation back provisions of Federal Rule of Civil Procedure 15(c), "the original complaint must have been timely filed." *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001); see also *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (same). Because that is not the case here, Plaintiff's RICO claim, which has a four-year statute of limitations, see *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010), cannot be saved by the relation back doctrine.

Plaintiff does not make the same concession as to the claims he seeks to assert on behalf of A.C. Nor do Defendants argue that these claims are barred by the statute of limitations or cannot relate back. This may be because the parties recognize the possibility that the statute of limitations as to A.C.'s claims may be tolled due to his minority. State law tolling provisions apply in § 1983 suits, *Ray v. Maher*, 662 F.3d 770, 773-74 (7th Cir. 2011), and Illinois has a statutory provision that tolls the relevant statute of limitations for minors until two years after they attain the age of 18. See 735 ILCS 5/13-211. A.C. "was about two years old," [188] at 5,

9

during the July 27, 2004 raid of Plaintiff's home, which means he is at most eleven years old now. He is thus still a minor for whom the statute of limitations period is tolled.

Defendants argue that the claims Plaintiff seeks to assert on A.C.'s behalf nonetheless must be dismissed because A.C. lacks standing to bring the claims. See [183] at 7-9. They contend that A.C., a toddler at the time of the allegedly illegal search, could not possibly have had an expectation of privacy in his home. See *id.* at 8. Plaintiff responds that "[t]here is no age requirement for constitutional rights." [188] at 5.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984)). Nonetheless, "a Fourth Amendment search does *not* occur – even when the explicitly protected location of a *house* is concerned – unless 'the individual manifested a subjective expectation of privacy in the object of the challenged search,' and 'society [is] willing to recognize that expectation as reasonable.'" *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (quoting *California v. Ciraolo*, 476 U.S. 207, 211 (1986)); see also *California v. Greenwood*, 486 U.S. 35, 39 (1988) ("The warrantless search and seizure of the garbage bags left at the curb outside the Greenwood house would violate the Fourth Amendment only if respondents manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable."). "[T]here is 'no talisman that determines in all cases those privacy expectations that society is prepared to accept as reasonable.'" *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 605 (7th Cir. 2012) (quoting *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987) (plurality opinion)).

Here, Plaintiff alleges that A.C., then a toddler, lived in the premises that were illegally searched and was present at the time of the search. [173-1] ¶¶ 11, 24. A.C. was present when the officer Defendants handcuffed Plaintiff and began to cry and became "hysterical" when the officer Defendants pointed their guns at Plaintiff and threatened to shoot the family dog. *Id.* ¶¶ 35-38. After Plaintiff's handcuffs were removed, A.C. ran into Plaintiff's arms. *Id.* ¶ 40. Plaintiff's girlfriend – A.C.'s mother – held and comforted A.C. when the officer Defendants removed Plaintiff from the premises. *Id.* ¶ 41. A.C. later moved with Plaintiff to Mississippi. See *id.* ¶ 99.

The first question the Court must ask is whether A.C. "manifested a subjective expectation of privacy in the object of the challenged search" – his home. The allegations in the proposed amended complaint do not demonstrate that A.C. did. Although it is established that the parents' expectations of privacy are the appropriate consideration when the child himself is the subject of the challenged search or seizure, see *Michael C. v. Gresbach*, 526 F.3d 1008, 1014-15 (7th Cir. 2008), *Doe v. Heck*, 327 F.3d 492, 511-12 (7th Cir. 2003), Plaintiff does not allege that A.C.'s person was searched or indeed even acknowledged by the officer Defendants. The object of the search was the home and other parts of the building, not A.C.'s person or even his belongings. *Calabretta v. Floyd*, 189 F.3d 808 (9th Cir. 1999), and *Franz v.* Lytle, 997 F.2d 784 (10th Cir. 1993), on which Plaintiff relies, are distinguishable on that basis. In *Calabretta*, the defendants entered a home without a warrant and demanded that a mother remove her three-year-old daughter's pants so they could visually inspect the girl for bruises. See *Calabretta*, 189 F.3d at 811-12. And in *Franz*, the defendants entered a home without a warrant, demanded that a mother remove her two-year-old daughter's diaper, and then touched the girl's genital area. See *Franz*, 997 F.2d at 785. In both cases, the searches at issue were directed at the children.

11

See also *Michael C.*, 526 F.3d at 1015 ("[I]t is unnecessary to show a subjective expectation of privacy in instances *in searches or seizures of* young children * * * * (emphasis added)). And in both cases, the courts denied qualified immunity to the defendants.

Plaintiffs are correct that in *Calabretta* the Ninth Circuit stated that "[t]he reasonable expectation of privacy of individuals in their homes includes the interests of both parents and children in not having government officials coerce entry," *Calabretta*, 189 F.3d at 820, but even if the Court were to rely on this dicta for the proposition that A.C. had a subjective expectation of privacy in his family's home, there is no indication that society is willing to respect this expectation as reasonable. "An expectation of privacy does not give rise to Fourth Amendment protection * * * unless society is prepared to accept that expectation as objectively reasonable." *Greenwood*, 486 U.S. at 39-40. Plaintiff has not pointed to any cases demonstrating that society has accepted as objectively reasonable a toddler's expectation of privacy in his family's dwelling. Though it is true that courts have held that minors may be capable of providing consent to enter a home, see *Untied States v. Sanchez*, 608 F.3d 685, 690 (10th Cir. 2010) (collecting cases), thus suggesting that in some instances society has recognized as reasonable their expectations of privacy in a home, these children were all significantly older than A.C. See *Daryl H. v. Coler*, 801 F.2d 893, 901 (7th Cir. 1986) ("A child of very tender years may not exhibit a subjective expectation of privacy in the same sense as an older child."); see also *Calabretta*, 189 F.3d at 820 ("There is not much reason to be concerned with the privacy and dignity of the three year old whose buttocks were exposed, because with children of that age ordinarily among the parental tasks is teaching them when they are not supposed to expose their buttocks."). This is not to say that very young minors necessarily are outside the scope of the constitutional protections of the Fourth Amendment; they too are "human being[s], entitled to be

treated by the state in a manner compatible with that human dignity." *Daryl H.*, 801 F.2d at 901. Indeed, the appeals courts that decided *Michael C.*, *Calabretta*, and *Franz* have held that physical searches of even very young children transgress constitutional boundaries. Absent allegations that the challenged search had anything to do with A.C. or his belongings, however, it is simply not reasonable to conclude that his legitimate expectations of privacy were violated, notwithstanding the egregious nature of the officer Defendants' alleged conduct. The Court thus agrees with Judge Kocoras's conclusion in *Morales-Placencia v. City of Chi.*, 2011 WL 1542964, at *3 (N.D. Ill. Apr. 21, 2011): "It is simply not plausible that [two-year-old A.C.] was anything but a bystander who witnessed illegal acts taking place. None of that illegal conduct was directed toward him, as the absence of specific allegations in the complaint necessarily manifest. Therefore, the motions to dismiss [A.C.'s] unreasonable search * * * claim[ is] granted."

Plaintiff has not demonstrated that A.C.'s Fourth Amendment claim would survive a motion to dismiss. Accordingly, the Court concludes that permitting the addition of this claim would be futile and denies the motion for leave to amend. A.C.'s proposed civil conspiracy claim rests on the validity of his Fourth Amendment claim and thus cannot proceed either. See *Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2011).

**IV. Conclusion**

For the reasons stated above, Plaintiff's motion for leave to amend [173] is denied. Defendant City of Chicago's motion [158] is denied as moot. This matter is set for status at 9:00 a.m. on October 16, 2013.

Dated: September 30, 2013

                                                Robert M. Dow, Jr.
                                                United States District Judge